United States District Court
Southern District of Texas
**ENTERED**
August 14, 2018
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JULISSA GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-16-0962 |
| | § | |
| TEXAS CHILDREN'S HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending and referred by the District Judge to the undersigned Magistrate Judge is Defendant's Motion for Summary Judgment (Document No. 24). Having considered that motion, Plaintiff's response (duplicate Document Nos. 27 & 28), Defendant's Reply, the claims alleged by Plaintiff in her original pleading, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED in PART.

## I.       Background

Plaintiff Julissa Garza ("Garza"), a Catholic, Hispanic female filed this suit against her former employer, Texas Children's Hospital, following her resignation in October 2014. In her Original Complaint, Garza alleged Title VII claims against Texas Children's Hospital for race and religion discrimination, and retaliation, and state law claims of slander and libel. Those claims were based on Garza's allegations that she was "subjected to a hostile and harassing environment, treated unfairly, and finally constructively terminated." Texas Children's Hospital has moved for summary

judgment on all of Garza's claims, arguing that Garza has not come forth with any evidence that would support a prima facie case of race or religion discrimination or a prima facie case of retaliation.  As for the state law slander and libel claims, Texas Children's Hospital maintains that it cannot be held liable, as a matter of law, for any alleged defamatory comments made by one of its employees because such comments would have been outside the course and scope of that employee's employment.  Garza has filed a response to the Motion for Summary Judgment, to which Texas Children's Hospital has filed a Reply.

## II.   Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1]  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

## III.    Discussion – Title VII Discrimination Claims

Garza has asserted Title VII race and religion discrimination claims based on alleged disparate treatment and a hostile work environment. Texas Children's Hospital argues that there is no summary judgment evidence that would raise a genuine issue of material fact on any of those claims.

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a)(1). Actionable employment discrimination under Title VII can be based on disparate treatment, disparate impact, and/or a hostile work environment. *Barnes v. McHugh*, Civil Action

No. 12-2491, 2013 WL 3561679 *11 (E.D. Tex. July 11, 2013) ("A plaintiff can assert 'status-based' Title VII claims under 42 U.S.C.A. § 2000e–2(a) and (k), 'retaliation' claims under 42 U.S.C.A. § 2000e–3, and 'hostile work environment' claims, both for status-based discrimination and retaliation. Title VII status-based discrimination claims are divided into two categories: 'disparate treatment' claims pursuant to § 2000e–2(a)(1), and 'disparate impact' claims pursuant to 2000e–2(k)").   At issue in this case is disparate treatment discrimination, and hostile work environment discrimination.

### A.      Disparate Treatment Discrimination Claims

For the first type of discrimination alleged in this case – that based on disparate treatment – a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).   For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias.   *See Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)); *see also Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) ("A comment demonstrates an employer's discriminatory intent if it is 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the

4

decision to terminate the employee.'") (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)).  Workplace comments that are alleged to be direct evidence of discrimination are only considered as such if the comments are: "'1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Jackson v. Cal-western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000)).   If the alleged workplace comment does not meet these four requirements, the comment cannot be considered direct evidence of discrimination, and is treated as a "stray remark."  *Id.*

Under the indirect method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.   A *prima facie* case of disparate treatment discrimination under Title VII requires  proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class.   *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999).

For purposes of maintaining a disparate treatment claim under Title VII, race and religion are are protected classes.  42 U.S.C. § 2000e-et seq; 29 U.S.C. 623(a)(1).  A plaintiff is "qualified" for a position if the "objective requirements" for the  position are met.  *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003).   A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change

in benefits.'" *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 761). A plaintiff is treated "less favorably" when the defendant gives preferential treatment to a member outside the protected class under "'nearly identical' circumstances." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Aguinaga v. Texas Alcohol and Beverage Comm'n*, 98 Fed. Appx. 328, 331, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a *prima facie* case of disparate treatment).

Once a *prima facie* case of disparate treatment discrimination has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas,* 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *Id.*; *McDonnell Douglas,* 411 U.S. at 802-803. To demonstrate a "pretext for discrimination" the plaintiff must show both that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence". *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *see also Jackson*, 602 F.3d at 378-79 ("A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'").

Here, Texas Children's Hospital argues that Garza has not established a prima facie case of

disparate treatment discrimination based on either her race (Hispanic) or her religion (alleged by Garza in her Complaint as "Catholic," but described by Garza at her deposition as "born again Christian").   According to Defendant, because the uncontroverted summary judgment evidence shows that Garza voluntarily resigned, she has not, and cannot show that she suffered an "adverse employment action."   While Garza does not dispute that she resigned, she argues that she was repeatedly pressured by one of her supervisors, Keith Boggs, to resign.  She also implies, but does not explicitly allege, that her resignation constituted a constructive discharge.

A constructive discharge can constitute an adverse employment action. *Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-30793, 2018 WL 1940410, at *3 (5th Cir. Apr. 24, 2018). But to qualify as a constructive discharge that would satisfy the "adverse employment" element of a prima facie case of disparate treatment discrimination, there must be evidence that a "'reasonable employee would feel compelled to resign' under the circumstances." *Noack v. YMCA of the Greater Houston Area*, 418 F'Appx 347, *4 (5th Cir. 2011) (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). Factors relevant to a constructive discharge determination include, whether the employee has suffered a: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not." *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 771–72 (5th Cir. 2001); *see also Odeh*, 2018 WL 1940410 at *3 ("In assessing those working conditions, our court considers whether the plaintiff was demoted, paid less, reassigned to menial or degrading work, subject to employer harassment or humiliation that was calculated to encourage the resignation, or asked to resign.").

Here, having reviewed all the summary judgment evidence in the record in the light most favorable to Garza, the Magistrate Judge concludes that Garza has not established a prima facie case of race or religion discrimination insofar as she has not shown that she suffered an adverse employment action. The summary judgment evidence in the record shows that Garza did resign, submitting to Texas Children's Hospital a letter dated September 16, 2014, stating that her last day at work would be October 3, 2014 (Document No. 26-1 at 147). Garza maintains, as she testified at her deposition, that her resignation came only after she was pressured by Keith Boggs to resign so that he would not have to terminate her. According to Garza, Boggs' insistence that she resign, coupled with his creation of a "paper trail" to support his threatened termination of her employment, constitutes a constructive discharge. Based on the summary judgment evidence in the record, the Magistrate Judge concludes that Garza's summary judgment evidence does not raise a genuine issue of material fact about whether she was constructively discharged and, as such, Garza has not established an essential element of her prima facie case – that she suffered an adverse employment action.

The summary judgment evidence shows that Garza was employed by Texas Childrens' Hospital for approximately fifteen months, from June 2013 to October 2014, as a medical assistant. She was assigned to an OB/GYN clinic, where she worked for and with several doctors, including Dr. Susan S. Shi. It was Garza's relationship with Dr. Shi[2] over a very short period of time, from July 15, 2015, to August 4, 2014, that both precipitated her resignation, and forms the basis of her race and religious discrimination claims. Garza testified at her deposition that Dr. Shi threw a shoe

---

[2] Dr. Shi was originally named as a Defendant, but the claims against her were dismissed by agreement of the parties on October 21, 2017 (Document No. 21).

8

at her on July 15, 2014 ("On this date while at work, Dr. Shi took her show off and threw it in my direction. The shoe – the shoe only hit my chair and missed my leg, but the action was very hostile." (Document No. 26-1 at 70); made an inappropriate and untrue comment about Garza having a sexually transmitted disease on July 24, 2014 ("A coworker took a pen from my desk, which is Karen Davenport. Dr. Shi asked to borrow a pen from Karen and asked Karen to give her the pen. Dr. Shi said, 'It is very ' – in a very plain – plainly loud voice, 'Ohh, this pen is Julissa's. Make sure you wash your hands, or your daughters are going to get GC chlamydia.") (Document No. 26-1 at 65);  and was angry and verbally abusive towards her on July 31, 2014, and August 4, 2014 ("She was yelling and screaming in my face.") (Document No. 26-1 at 60; 57-60; 73-74).   Garza also testified at her deposition that Keith Boggs, one of her supervisors, informed her on August 4, 2014, that she needed to start looking for another job (Document No. 26-1 at 75), told her in early August that he would send her resume "around" (Document No. 26-1 at 83-87), and provided her with paperwork on August 12, 2014, reflecting alleged past work performance issues in order to create a paper trail for her termination (Document No. 26-1 at 85-87).  Garza contacted the EEOC the next day, August 13, 2014, and then went to the Human Resources department at Texas Children's Hospital, where she spoke with Mr. Jones.  Mr. Jones assured Garza on August 13, 2014 that the performance-related paperwork Keith Boggs had given her the day before would not be put in her personnel file, that Keith Boggs could not "fire" her, and that he (Jones) would look into a transfer for Garza to another position at Texas Children's Hospital (Document No. 26-1 at 22-24; 90-94; 95). When a transfer was not made available to her within a couple of days, Garza began looking for another job (Document No. 26-1 at 52-53).  On September 12, 2014, she obtained a job offer from Methodist Hospital, at a hourly rate over $2.00 higher than what she earned at Texas Children's

(Document No. 26-1 at 30-31).  She accepted that offer, and submitted her resignation letter, on September 16, 2014 (Document No. 26-1 at 147).

Here, taking the summary judgment evidence in a light most favorable to Garza, the Magistrate Judge concludes that Gazra has not come forth with any summary judgment evidence that would support the adverse employment action element of a prima facie claim of race or religion discrimination.  What is fatal to that element of Garza's prima facie case is her own testimony that she resigned only after she had obtained other employment.  Garza explained that at her deposition, as follows:

> Q:      We know from the lawsuit that you were not happy with your job at Texas Children's, but what caused you to submit this [ ] Letter of Resignation on this particular date?
>
> A:      I want to say about this time, I already knew 100 percent that I was going to have a job before I can give them a two weeks notice.
>
> Q:      So you had already accepted a job elsewhere?
>
> A:      Yeah.  That I was going to be getting a job, yes.
>
> Q:      So was it important to you to not resign from Texas Children's until you had another job pinned down?
>
> A:      Yes.  I carried the insurance for my entire family.
>
> * * *
>
> Q:      And was your reason for giving notice at Texas Children's the fact that you had accepted a job at Methodist?
>
> A:      I – well, one of the reasons, but not the main reason.
>
> Q:      Well, we talked about the fact that you weren't going to give notice until you had another job, correct?
>
> A:      Yes.

Q:      Because it was important for you to maintain insurance?

A:      Yes, ma'am.

Q:      And the dates seem to fit, so it appears to me that you gave notice once you knew that you were going to work for Methodist.

A:      Yes, ma'am.

(Document No. 26-1 at 21-22, 29-30).  This deposition testimony undermines Garza's claim that her resignation was the result of Keith Boggs' insistence that she resign so that he did not have to terminate her.  In particular, the summary judgment evidence shows that while Garza did feel pressured to resign, and did sign some performance-related paperwork on August 12, 2014, which paperwork could have provided a basis for her termination, Garza testified at her deposition that Mr. Jones in the Human Resources department told her the very next day that she would not be fired and that the performance related paperwork she had signed would not be put in her personnel file (Document No. 26-1 at 22-24; 90-94; 95).  Furthermore, Garza's subsequent resignation, by her own admission, was the result of her having found other employment.  Taken in a light most favorable to Garza, the summary judgment evidence simply does not support a determination that Garza was constructively discharged.   She therefore has not established that she suffered an adverse employment action – an essential element of her prima facie case of  race and/or religion discrimination.   Summary judgment is therefore warranted on Garza's disparate treatment race and religion discrimination claims.

### B.      Hostile Work Environment Discrimination

For the second class of discrimination claims – those based on a hostile work environment – a plaintiff must prove: (1) membership in a protected class; (2) unwelcome harassment; (3)

harassment based on the plaintiff's membership in a protected class; and (4) harassment that affects a term, condition, or privilege of employment. *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *see also McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 292 (E.D. Tex. 1996). As with disparate treatment discrimination claims, race and religion are protected classes for purposes of a hostile work environment claim. As for the harassment complained of, it must be both unwelcome, and *based on* the plaintiff's membership in a protected class. *See, e.g., Harris-Childs v. Medco Health Solutions, Inc.*, No. 4:03-CV-77-Y, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) ("To establish a *prima-facie* case of racial harassment, the plaintiff must provide evidence that the complained-of conduct had a racial character or purpose."), *aff'd*, 2006 WL 616022 (5th Cir. 2006) ("[W]e agree with the district court that Appellant has failed to show that the harassment was racially based"); *Vallecillo v. U.S. Dep't of Housing & Urban Dev.*, 155 F.App'x 764, 767 (5th Cir. 2005) ("Accepting all of the incidents Vallecillo lists as true, none are related to his protected status."); *Smith v. Ridge*, Civil Action No. H-03-5864, 2005 WL 6443884 *4-5 (S.D. Tex. Feb. 8, 2005) (granting summary judgment on hostile work environment age discrimination claim where there was no summary judgment that any harassment "was based on [ ] age"). Finally, the alleged harassment must be sufficiently severe or pervasive such that it can be said to affect a term, condition or privilege of employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). Whether the harassment is sufficiently severe or pervasive is based on the totality of the circumstances:

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 23; *accord Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996). The conduct must be

both objectively hostile to a reasonable person and the plaintiff must subjectively perceive the environment to be abusive. *Harris*, 510 U.S. at 21-22. The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not sufficiently affect a person's employment conditions to fall within the ambit of Title VII. *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986). Moreover, derogatory comments which are sporadic in nature or made in casual conversation do not violate Title VII. *McCray*, 942 F.Supp. at 293; *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). Instead, there must be a "steady barrage of opprobrious racial comment." *McCray*, 942 F.Supp. at 293; *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981).

Texas Children's Hospital argues in its Motion for Summary Judgment that there is no summary judgment evidence to support a hostile work environment claim based on Garza's race or her religion. The Magistrate Judge agrees. While Garza testified during her deposition that Dr. Shi made it known that she was agnostic and was, at times, hostile to all religions, Garza did not provide any details about any religion-based comments or actions on the part of Dr. Shi, or anyone else at Texas Children's, that were directed at her or her religion. In addition, there is no summary judgment evidence that any comments by Dr. Shi were severe or pervasive. Dr. Shi's alleged comments about religion, including the sole description of a comment about "crazy Christians" (Document No. 26-1 at 100), cannot be considered severe, and there is no summary judgment evidence that Dr. Shi's comments were pervasive in the workplace. As for Garza's hostile work

environment claim based on her race, there is no evidence, at all, of any racially motivated comments or conduct by Dr. Shi or anyone else at Texas Children's. In all, there is no summary judgment evidence in the record that raises a genuine issue of material fact for trial. Texas Children's Hospital is, therefore, also entitled to summary judgment on Garza's hostile work environment claim(s).

## IV.    Discussion – Title VII Retaliation Claim

Garza alleges in her Complaint that when she refused to resign she was "subsequently wrongfully discriminated against and terminated." Complaint (Document No. 1) at 7. Texas Children's seeks summary judgment on Garza's retaliation claim, arguing that she has not, and cannot, establish that she suffered an adverse employment action – an essential element of a prima facie case of retaliation.

Title VII proscribes an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3. Retaliation claims under Title VII require a plaintiff to first establish a *prima facie* case of retaliation, with proof that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). What constitutes an "adverse employment action" for purposes of a retaliation claim is any action taken by an employer that is harmful enough that it "might have dissuaded a reasonable worker from" engaging in protected activity. *Burlington N. &*

14

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (making it clear that for purposes of the anti-retaliation provisions of Title VII, an adverse employment action is not limited to ultimate employment decisions); *see also Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702, 707 (S.D. Tex. 2014) (what constitutes an adverse employment action for a retaliation claim is "an objective, fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69)). As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g.*, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of retaliation). At the *prima facie* stage, a "but for" causal link need not be shown. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Sherrod*, 132 F.3d at 1122. If the defendant carries this burden, the plaintiff must prove that the stated nondiscriminatory reason for the adverse employment action is a "pretext" for discrimination by either directly persuading "the trier of fact that 'a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence'" *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 739-40 (Tex. App.–14th Dist. 1999) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To carry the ultimate

burden on a retaliation claim, a plaintiff must also show that a defendant would not have taken the adverse employment action "but for" the plaintiff's participation in the protected activity. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999).

Here, Texas Children's argues that Garza has not come forth with summary judgment evidence that she suffered an adverse employment action, an essential element of a Title VII retaliation claim. Based on the summary judgment evidence set forth above, the Magistrate Judge agrees. In addition, based on her own deposition testimony, Garza complained to Mr. Jones in the Human Resources department of Texas Children's on August 13, 2014. While that complaint may satisfy the protected activity element of a prima facie retaliation claim, there is no summary judgment evidence that Garza suffered any adverse employment action thereafter. Instead, as set forth above, Mr. Jones assured Garza that she would not be fired and told her that he would look into a transfer for her.

Because there is no summary judgment evidence that Garza suffered an adverse employment action *after* she complained about her treatment by Dr. Shi and Keith Boggs, and because Garza did not respond, at all, to this aspect of Texas Children's Motion for Summary Judgment, summary judgment is also warranted on Garza's retaliation claim.

## V.      Discussion – Libel and Slander Claims

Garza alleges in her Complaint, in support of her slander and libel claim(s), that false statements were made about her and her work performance. In her deposition, however, Garza focuses on Dr. Shi's false comments about her having a sexually transmitted disease. Garza described those comments, and the context in which they were made, as follows:

16

A:  I was humiliated, embarrassed, ashamed and offended by Dr. Shi.  A coworker took a pen from my desk, which is Karen Davenport.  Dr. Shi asked to borrow a pen from Karen and asked Karen to give her the pen.  Dr. Shi said, "It is very" – in a very plain – plainly loud voice, "Ooh, this pen is Julissa's.  Make sure you wash your hands, or your daughters are going to get GC chlamydia. . . . This was stated in front of several coworkers.  I was embarrassed and humiliated.  And I now felt I had to tell others that I have not – I do not have an STD.  This was extremely hostile and inappropriate behavior and unproper [sic]  behavior, uncalled for, and never should happen or [be] tolerated in the workplace.  And I [ ] definitely should not have to have endured such humiliation.

Q:      And that says that happened on July 24th, 2014, correct?

A:      Correct.  Correct.

Q:      And you're upset about the comment now.  Were you upset by it then?

A:      I was.

Q:      Did you show that you were upset?

A:      I told her.  I said – I looked up, and I saw that she's holding my pen and she's holding it like this (indicating).  "Ooh, this is Julissa's pen.  And then she throws it at Karen, and tells her, "You make sure you wash your hands, or your girls are going to have GC chlamydia."  And I'm looking at her, and I'm like, "What are you trying to say?  That's my pen.  I don't have this disease.  Why are you saying this?" Everybody around me was laughing.  She was laughing.

Q:      Is it possible they were laughing because it was a joke?

A:      You don't joke about stuff like that.  You're a woman.  How would you like if a physician came out and said that to all the coworkers?

Q:      But you're in an OB/GYN practice that involves STDs and similar things, correct?

A:      Yes, and that's why you don't play like that.  And you would think a physician wouldn't say stuff like that.

Q:      But wasn't there an inside joke about Dr. Law and the fact that he only used one glove with his exams?

A:      I don't know about that joke, if there is an inside joke of that or not.  Dr.

Law's been there for many years.

He does use one hand, but I'm in there with him, and he – the hand that he has gloved is the hand that he touches a patient with.

Q:      But isn't that something that's joked about in that pod?

A:      I honestly don't know if that's what they joke about or nor.  I go to work.

Q:      Are there ever jokes in the pod?

A:      I'm sure there are.  I'm too busy to be sitting there.

Q:      So you didn't like participating in joking?

A:      No, I did not participate in joking.

Q:      But there was joking going on around you?

A:      I'm sure there was.

Q:      And is it possible that this comment about GC chlamydia was just a joke?

A:      Accusing somebody of [ sic] they have a sexually transmitted disease is not a joke.

Q:      Is it possible that it was meant as a joke?

A:      I didn't see it as a joke.

Deposition of Julissa Garza (Document No. 26-1 at 64-68) (internal objections omitted).

Texas Children's argues that summary judgment is warranted on Garza's libel and slander claim because the comments about which she complained in her deposition were made in jest, and are not actionable as a matter of law.  Texas Children's also argues, in the alternative, that Dr. Shi's comments, even if they are actionable, cannot be attributed to Texas Children's because the comments were not, and could not, have been made in the course and scope of Dr. Shi's employment.  Garza, in response to the Motion for Summary Judgment, maintains that Dr. Shi's

untrue comments about a sexually transmitted disease were defamatory, and that because the comments were made by Dr. Shi in a OB/GYN clinic setting, the comments can be seen as having been made in the course and scope of Dr. Shi's employment.

According to the Texas Court of Appeals in *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App. 1997), *writ denied* (Nov. 6, 1997):

> Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 91 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.).   For a defamatory oral statement to constitute slander *per se,* it must fall within one of four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, business, profession, or calling, and (4) imputation of sexual misconduct. *Villasenor v. Villasenor,* 911 S.W.2d 411, 418 (Tex.App.—San Antonio 1995, no writ).

Because Dr. Shi's comment about Garza having an "GC chlamydia," a sexually transmitted disease, falls within the type of statement that can be considered slander *per se*, and because the comment was made by Dr. Shi to Garza during working hours at the OB/GYN clinic, Texas Children's argument that the statement, when the totality of the circumstances are considered, was not defamatory, is untenable.  Also untenable, at this summary judgment stage, is Texas Children's argument that Dr. Shi's statement was made outside the course and scope of her employment.  Dr. Shi worked as a physician at the OB/GYN clinic.  As such, and as argued by Garza, Dr. Shi ostensibly diagnosed and treated patients with sexually transmitted diseases, such as "GC chlamydia."  While Texas Children's suggests that Dr. Shi's comment was a "joke" and that such a "joke" did not fall within the course and scope of her employment as a physician, Texas Children's offers no summary judgment evidence to support that argument.  Instead, the summary judgment evidence in the record is that Dr. Shi suggested, in front of Garza's coworkers, that Garza had "GC

chlamydia." The summary judgment evidence also shows that Garza felt like she had to deny the truth of Dr. Shi's comments. Upon this summary judgment record, where it does not appear conclusively that Garza could not prevail on her slander/libel/defamation claim, summary judgment should be denied.

## VI.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that there is no genuine issue of material fact on Plaintiff Julissa Garza's Title VII race discrimination, religion discrimination, and retaliation claims, but that genuine issues of material fact exist on her slander/libel/defamation claim, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 24) be GRANTED in PART, and that Plaintiff Julissa Garza's claims against Defendant Texas Children's Hospital for race discrimination, religion discrimination and retaliation be DISMISSED WITH PREJUDICE. The Magistrate Judge further

RECOMMENDS that Defendant's Motion for Summary Judgment on Plaintiff's libel and slander claim be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.

1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this ____ day of August, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

21